## HENRY CREASON v. NANCY HARRINGTON, ET AL.

**Limitations—When Runs—Contents of Last Will—Evidence.**
> Where a widow has only a life estate in real estate, without power to sell, the statute of limitations only begins to run against the owners of the fee, after the death of the widow.

**Evidence.**
> For what is sufficient proof of the contents of a will destroyed by fire after being probated, see opinion.

### APPEAL FROM MARSHALL CIRCUIT COURT.

September 14, 1874.

OPINION BY JUDGE PRYOR:

The devisor died in or about the year 1845, and the vendees of the land from his widow have been in undisturbed possession of their purchase since the years 1847 and 1848. The statute of limitation constitutes no defense to the action, and the right of the appellees to recover depends alone upon the provisions of the will of their father. If the widow was only entitled to a life estate, without any power to sell, the statute did not commence to run against the children until her death. This took place in the year 1865, and therefore the lapse of time presents no bar to the recovery.

The will of Harrington was destroyed by the burning of the clerk's office, when it had been recorded after probate, and the only mode of arriving at its contents is from the parol testimony offered by the father. The will was proven in the year 1846, and destroyed in the year 1848, a period of twenty years and more prior to the time the witnesses are called on to testify as to its contents; and their statements as to its provisions must necessarily be to some extent unsatisfactory. This land was sold by the widow, who was also executrix, before the destruction of the will, and before the conveyances were made by her passing the absolute fee simple estate. The witnesses for the appellees say that the widow was to hold the estate during life or widowhood. If such were the contents of that instrument, it is unreasonable to presume that the deeds made to the purchasers could have attempted to pass the absolute estate, or that these vendees would have invested their money in an estate that, from the provisions of the will, as contended for by the appellees, must terminate at the death of the widow, and liable to end at any time in the event of her marriage. It is also remarkable that, although the widow married in 1851, these appellees, being then entitled to the

estate, if their versions of the provisions of the will be the true ones, should have slept upon their rights for fifteen or twenty years, with the occupants on the land sold by the mother without right, and never attempted to regain the possession. Some of them, it is true, were infants, others of full age, and with a full knowledge, as they now insist, of their right to the land. The witnesses by whom they prove the contents of the destroyed paper were near relatives, and directly interested in having their rights secured; but still, no suit has been prosecuted for the recovery of this land until after an occupancy of it by the vendees for near twenty years, and when the youngest of the children has arrived at the age of thirty or forty. These circumstances conduce strongly to the conclusion that the widow had the power to sell, and must cause the chancellor to hesitate before depriving the appellants of property they have occupied and claimed to own for more than twenty years.

It is shown, however, by several witnesses for the appellant, that the will contained a provision empowering the widow, who was executrix, to sell so much of the land as was necessary to pay the debt. One of the witnesses examined a copy of the will in the possession of the widow at the time he bought an interest in the land; another was present when the will was written, and heard it read; and still a third attested the will itself; and although this witness may allude to circumstances calculated to excite suspicion as to his recollection of the provisions of the will, yet he is sustained fully by others who speak of its contents, and by Copeland, who swears that Smith was present when the will was written. This witness, Copeland, was living with Harrington when the latter died, and gives a definite statement of the personal property owned by the devisor at his death. He left no personal estate subject to execution, and not enough for the comfortable subsistence of his wife and children. The preponderance of the evidence is that he had no personal estate out of which his debts could have been paid. The land owned by him was at the time of his death worth not more than three hundred and fifty dollars, and perhaps less. He owed near two hundred and fifty dollars, not including his funeral expenses. His widow mortgaged some of the land to pay a part of the debts, and no doubt sold the whole of it to pay the indebtedness of the estate. She may have sold more land than was necessary to pay all the debts; still, the power to sell was given her by the will, and whether her conveyance is as executrix or as widow, the legal presumption, after such a lapse of time, must be that she was exercising her right to sell by reason of the will of her

husband. An authority as executor to sell land for the payment of debts, if necessary, makes the executor the judge of the necessity; and though there is no deficiency, a sale will be valid. *Coleman v. McKinney*, 312 J. J. Marsh. 246. There is no doubt, then, that the appellant, in 1858, applied to some of the appellees to purchase their interests. The will had then been destroyed. The land had increased in value. The contents of the will were the subject-matter of dispute; and if a life estate existed in the widow, only, the appellant's title was gone. He may have well offered to purchase under the circumstances, to prevent litigation, if nothing else, but this act on his part cannot be regarded as a waiver of his right, sustained as it is by the facts and circumstances of the case.

The judgment is *affirmed* on the cross appeal and *reversed* on the original appeal, with instructions to the court below to dismiss appellees' petition.

*Gilbert, for appellant.*
*Wake, for appellees.*